IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PINCHAS RAUL,<br><br>              Plaintiff,<br><br>   v.<br><br>AMERICAN RIVER BANKSHARES, CHARLES D. FITE, WILLIAM A ROBOTHAM, KIMBERLY A. FOX, NICOLAS C. ANDERSON, JEFFERY OWENSBY, JULIE RANEY, DAVID E. RITCHIE, JR., and PHILIP A. WRIGHT,<br><br>              Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

      Plaintiff Pinchas Raul ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by American River Bankshares ("AMRB" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning AMRB and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against AMRB and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger between AMRB and Bank of Marin Bancorp ("BMRC") (the "Proposed Transaction").

2. On April 16, 2021, the Company entered into an Agreement to Merge and Plan of Reorganization (the "Merger Agreement") with BMRC. Pursuant to the terms of the Merger Agreement the Company's shareholders will have the right to receive 0.575 shares of BMRC common stock per share of AMRB owned (the "Merger Consideration").

3. On June 21, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Registration statement with the SEC on Form S-4/A (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against AMRB and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to AMRB shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of AMRB shares.

9. Defendant AMRB is incorporated under the laws of California and has its principal executive offices located at 3100 Zinfandel Drive, Suite 450, Rancho Cordova, California. The Company's common stock trades on the NASDAQ under the symbol "AMRB."

10. Defendant Charles D. Fite ("Fite") is and has been the Chairman of the Board of AMRB at all times during the relevant time period.

11. Defendant William A. Robotham ("Robotham") is and has been Vice-Chairman of the Board of AMRB at all times during the relevant time period.

12. Defendant Kimberly A. Box ("Box") is and has been an AMRB director at all times during the relevant time period.

13. Defendant Nicolas C. Anderson ("Anderson") is and has been an AMRB director at all times during the relevant time period.

14. Defendant Jeffery Owensby ("Owensby") is and has been an AMRB director at all times during the relevant time period.

15. Defendant Julie Raney ("Raney") is and has been an AMRB director at all times during the relevant time period.

16. Defendant David E. Ritchie, Jr. ("Ritchie") is and has been an AMRB director at all times during the relevant time period.

17. Defendant Phillip A. Wright ("Wright") is and has been President, Chief Executive Officer ("CEO") and AMRB director at all times during the relevant time period.

18. Defendants Fite, Robotham, Box, Anderson, Owensby, Raney, Ritchie, and Wright are collectively referred to herein as the "Individual Defendants."

19. The Individual Defendants, along with Defendant AMRB, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20. AMRB is a Sacramento-based community bank serving Northern California since 1983. Headquartered in Rancho Cordova, CA, American River Bank is the wholly owned subsidiary of AMRB. The bank provides a wide range of products and services across 10 branches to mid-sized community-based businesses and individuals located in Sacramento, Amador, Sonoma, and Placer counties. AMRB offers secured and unsecured commercial real estate, secured real estate, and other installment loans as well as personal banking solutions and

4

deposits products. AMRB's honest approach, commitment to community and focus on profitability is intended to lead their clients to greater success.

### The Company Announces the Proposed Transaction

21.     On April 19, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> NOVATO, Calif. and SACRAMENTO, Calif., April 19, 2021 (GLOBE NEWSWIRE) -- Bank of Marin Bancorp, "BMRC" (Nasdaq: BMRC), parent company of Bank of Marin, "the Bank," and American River Bankshares "AMRB" (Nasdaq: AMRB), parent company of American River Bank, today announced the signing of a merger agreement. American River Bankshares has ten branches across the Greater Sacramento, Amador and Sonoma County regions, assets of $916.1 million, total deposits of $788.6 million, and total loans of $475.4 million as of March 31, 2021.
>
> "This merger brings together two exceptional institutions that share complementary values and disciplined fundamentals," said Russell A. Colombo, President and Chief Executive Officer of Bank of Marin Bancorp and Bank of Marin. "Bank of Marin will be able to expand its franchise by delivering the same legendary service that is the hallmark of a community bank on a regional scale."
>
> David E. Ritchie, Jr., President and Chief Executive Officer of American River Bankshares, commented, "We are excited for the opportunity to join one of the strongest banks in the region. We believe our clients, shareholders and employees will benefit from Bank of Marin's history of profitable growth and expertise in successfully executing acquisitions. We believe their community banking model, culture and commitment to high-quality client service make Bank of Marin an excellent partner for American River Bank."
>
> The transaction will be immediately accretive to BMRC's earnings, adding to shareholder value. AMRB shareholders will receive a fixed exchange ratio of 0.575 shares of BMRC common stock for each share of AMRB common stock outstanding. Based on BMRC's closing stock price of $39.06 on April 16, 2021, the transaction is valued at $134.5 million, or $22.46 per share of AMRB common stock. Such value will fluctuate with changes in the stock price of BMRC. The total transaction value includes the value of AMRB options being paid in cash by BMRC.
>
> The transaction is expected to close in the third quarter of 2021, and upon closing the Bank will have approximately $4.0 billion in assets and operate thirty-one branches in ten counties, including Alameda, Amador, Contra Costa, Marin,

Napa, Placer, Sacramento, San Francisco, San Mateo, and Sonoma. Upon closing, BMRC will add two board members from AMRB to its board. BMRC's and AMRB's boards of directors have unanimously approved the acquisition agreement. Additionally, directors of AMRB and BMRC have entered into agreements whereby they have committed to vote their shares in favor of the transaction. The closing of the acquisition is subject to satisfaction of customary closing conditions, including regulatory approvals and approval of BMRC and AMRB shareholders.

Bank of Marin Bancorp received financial advisory services and a fairness opinion from Keefe, Bruyette & Woods, *A Stifel Company*, and Stuart Moore Staub served as legal counsel. American River Bankshares received financial advisory services and a fairness opinion from Piper Sandler & Co., and Manatt, Phelps & Phillips LLP served as legal counsel.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

22. On June 21, 2021, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

24. The Registration Statement contains projections prepared by the Company's and BMRC's management concerning the Proposed Transaction, but fails to provide material information

25. Specifically, the Registration Statement must disclose: (i) Mean analyst earnings per share estimates for the Company and BMRC for the quarters ending June 30, 2021, September 30, 2021, December 31, 2021 as well as the year ending December 31, 2022; (ii) estimated annual asset and earnings per share growth rates for the years ending December 31, 2023 through December 31, 2025 for both the Company and BMRC; and (iii) the pro forma financial impact of the Proposed Transaction on BMRC based on certain assumptions relating to transaction expenses, purchase accounting adjustments and cost savings, as provided by BMRC management.

26. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Piper Sandler's Financial Opinion

27. The Registration Statement contains the financial analyses and opinion of Piper Sandler & Co. ("Piper Sandler") concerning the Proposed Transaction, but fails to provide material information concerning such.

28. With respect to Piper Sandler's *Comparable Company Analysis* for the Company and BMRC, the Registration Statement fails to disclose the individual multiples and metrics for each of the comparable companies reviewed in the analysis.

29. With respect to Piper Sandler's *Analysis of Precedent Transactions*, the Registration Statement fails to disclose the individual multiples and metrics for all the transactions observed in the analysis.

30. With respect to Piper Sandler's *Net Present Value Analyses* for the Company, the Registration Statement fails to disclose: (i) the Company's terminal value; (ii) the basis for Piper Sandler's application of multiples in the analysis; and (iii) the inputs and assumptions underlying Piper Sandler's use of discount rates ranging from 9.0% to 15.0%, and 13.16%.

31. With respect to Piper Sandler's *Net Present Value Analyses for Bank of Marin*, the Registration Statement fails to disclose: (i) BMRC's terminal value; (ii) the basis for Piper Sandler's application of multiples in the analysis; and (iii) the inputs and assumptions underlying Piper Sandler's use of discount rates ranging from 8.0% to 16.0%, and 11.14%.

32. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

33. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such


information to shareholders although they could have done so without extraordinary effort.

39. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

40. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

42. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

43. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of AMRB within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of AMRB, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains

the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

48. In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states

all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 25, 2021                                              Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*